UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal Case No. 07-CR-337-01 (HHK) |
| | : | |
| v. | : | |
| | : | Sentencing Date: September 5, 2008 |
| **ERICK O. ALFARO,** | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum in support of the government's sentencing recommendation.

### PROCEDURAL BACKGROUND

1. On May 27, 2008, the defendant pled guilty to Simple Possession of Cocaine, in violation of 21 U.S.C. § 844(a); and Carrying a Pistol Without a License, in violation of 22 D.C. Code § 4504(a) . The defendant's plea was pursuant to an agreement with the Government.

2. The offense of Simple Possession carries a maximum statutory penalty of up to one year of imprisonment, a fine of at least $1,000.00, and a special assessment of $50.00. See 21 U.S.C. § 844(a) and 18 U.S.C. § 3571(b)(3). If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than one year. See 18 U.S.C. § 3583(b)(3). If a term of probation is imposed, it may not exceed five years. See 18 U.S.C. § 3561(c)(2). Pursuant to the United States Sentencing Commission, Guidelines Manual (2007) (hereinafter "Federal Sentencing Guidelines" or "U.S.S.G"), the defendant's total offense level for the charge of Simple Possession

is four. With three criminal history points and a criminal history category of II,[1] the defendant's guideline range for imprisonment is zero to six months. See PSR at ¶ 59. The guideline range for a term of supervised release is one year. See PSR at ¶ 54. The guideline range for a period of probation is not more than three years. See PSR at ¶ 70.

    3. The offense of Carrying a Pistol Without a License carries a maximum statutory penalty of up to five years of imprisonment, a fine of up to $5,000.00, and a special assessment of not less than $100.00 or more than $5,000.00. See 22 D.C. Code § 4504(a), 4 D.C. Code § 516. The maximum sentence of incarceration that can be imposed at the time of the initial sentencing is three years. 22 D.C. Code § 4504(a). If the Court imposes a sentence of more than one year, it must impose a term of supervised release of three years. See 24 D.C. Code § 403.01(b)(2)(B). If the Court imposes a sentence of one year or less, it may not impose a term of supervised release of more than three years. See 24 D.C. Code § 403.01(b)(3)(B). Pursuant to the District of Columbia Sentencing Commission's Voluntary Sentencing Guidelines (hereinafter "D.C. Sentencing Guidelines"), the charge of Carrying a Pistol Without a License is a Group 8 offense. With a current criminal history score of three-quarters of a point, the defendant is placed in Group B, and his guideline range is ten to twenty-eight months. See PSR at ¶ 60.[2] A sentence in this range allows for

---

    [1] On September 3, 2008, the defendant is due to be sentenced on the charge of Robbery with a Dangerous Weapon in Prince George's County, Maryland, for his participation in a robbery occurring before the offense conduct to which he has pled guilty in the instant case. See PSR at ¶ 29. Assuming that the Maryland sentencing takes place (which it may not since the defendant is being held here for this sentencing), and that the defendant is sentenced to a term of more than one year and one month, he would have five criminal history points, and criminal history category of III. See U.S.S.G. § 4A1.1(a). Nevertheless, his guideline range would not change.

    [2] As discussed in footnote one, on September 3, 2008, the defendant is due to be sentenced on the charge of Robbery with a Dangerous Weapon in Prince George's County,

a term of imprisonment, a split sentence, or probation. See PSR at ¶¶ 61. Should the Court choose to impose a term of probation, it may (1) suspend imposition of the sentence, (2) impose the sentence and suspend execution of the sentence, or (3) impose the sentence and suspend the execution of a portion of the sentence. See PSR at ¶ 71.

    4. As recounted in the Presentence Investigation Report, since the date of the plea, the Pretrial Services Agency has informed the Court of numerous infractions committed by the defendant while on release to the High Intensity Supervision Program. He repeatedly violated curfew, and removed electronic monitoring equipment from his ankle on June 6, 2008. After he removed the equipment, he was instructed to report to Pretrial Services Agency so that the equipment could be reattached, but he failed to do so. He failed to comply with his drug testing requirements. On July 10, 2008, the Court revoked the defendant's release and held him without bond pending sentencing. See PSR at ¶ 8.

## FACTUAL BACKGROUND

    5. At the time of his plea, the defendant acknowledged certain relevant criminal conduct by signing a factual proffer. Specifically, the defendant admitted that on November 19, 2007, at approximately 11:25 p.m., officers of the Metropolitan Police Department operating in a plain

---

Maryland, for his participation in a robbery occurring before the offense conduct to which he has pled guilty in the instant case. See PSR at ¶ 29. Should he be sentenced on the Maryland charge prior to the sentencing in the instant case, it appears that his criminal history score under the D.C. Sentencing Guidelines would go up by three points, to three and three-quarter points. He would then be placed in Group C, with a guideline range of fourteen to thirty-two months. A sentence in this range allows for a term of imprisonment, or a split sentence, but not straight probation. See D.C. Sentencing Guidelines, Appendix C (Sentencing Chart for Felonies Arranged by D.C. Code), at C-13 (placing the D.C. Code offense of armed robbery into Group 5 on the Master Grid); Appendix A (Master Grid), assessing Group 5 offenses at three points; and § 2.2.6 (requiring that out-of-state offenses be scored like the most comparable D.C. Code offense).

clothes made contact with him in front of 4815 North Capitol Street, N.E., Washington, D.C. Officer Robinson asked the defendant if he had any drugs, guns, needles or stems. The defendant took a deep breath, shook his head from side to side, and said "yeah." The defendant removed a clear bag from inside of his boxer shorts and placed it in Officer Robinson's hand. The bag contained nine smaller bags consisting of a total of 4.8 grams of cocaine. Officer Robinson placed the defendant in handcuffs and asked him if he had anything else. The defendant said "yeah." Officer Robinson removed a clear plastic bag containing a from the defendant's right pocket. That bag contained an additional 24.2 grams of cocaine. The police also recovered $252.33 from the defendant's left sock.

6. Officer Robinson asked the defendant if he had anything else. The defendant stated, "yeah, a gun." Officer Robinson removed a silver and black Ruger nine millimeter semiautomatic pistol from the defendant's waistband. There were two rounds of ammunition in the pistol. The pistol was test-fired and found to be operable. The defendant does not have a license to carry a pistol in the District of Columbia.

7. Although the following was not specifically admitted in the factual proffer, it is relevant to the defendant's sentencing in the instant case. A friend of the defendant known as Ariel Rodriguez was with the defendant at the time of the defendant's arrest, and he was also arrested for possessing cocaine. See Rodriguez Arrest Report (attached as Exhibit A). Mr. Rodriguez had a total of 32 grams of cocaine, just four more grams than the defendant. See Rodriguez DEA-7 (attached as Exhibit B). Mr. Rodriguez pled guilty to Attempted Possession with Intent to Distribute Cocaine in D.C. Superior Court Case No. 2006CF2026914. See PSR at ¶ 9.

8. Earlier the same day that both the defendant and Mr. Rodriguez were arrested for

possessing cocaine in these related cases, they participated in an armed robbery in Hyattsville, Maryland. According to the arrest report, the victim was a former employer of the defendant, and who had fired the defendant. The defendant and Mr. Rodriguez approached the victim with guns as he was leaving his residence. The defendant pointed his gun directly at the victim, and they robbed the victim of $4,500.00. See PSR at ¶ 29. On June 4, 2008, the defendant pled guilty to Robbery with a Dangerous Weapon in the Circuit Court for Prince George's County, Maryland, for his participation in this armed robbery. Id. This is the offense for which the defendant is due to be sentenced on September 3, 2008.

**ARGUMENT**

9. Considering the sentencing factors enumerated in 18 U.S.C. § 3553(a), the guidelines and policies promulgated by the United States Sentencing Commission and the District of Columbia Sentencing Commission, and given the nature and circumstances of the defendant's criminal actions in this case, his criminal history, and his repeated violations of his conditions of release, the Government requests that the Court sentence the defendant as follows: (1) For Carrying a Pistol Without a License, to twenty-four months of imprisonment, followed by a three-year period of supervised release, with mandatory drug testing and treatment, and educational and/or vocational training; and (2) for Simple Possession, to six months of imprisonment, followed by a one-year period of supervised release, this sentence to run concurrent to the sentence for Carrying a Pistol Without a License. Should the defendant be sentenced in Maryland prior to the instant sentencing, we further request that these sentences run consecutive to any sentence imposed in Maryland.[3]

---

[3] Although the D.C. Sentencing Guidelines provide for a "split sentence" (where the Court can impose a sentence and then suspend execution of a portion of the sentence), followed by a period of "probation," these concepts are no longer used in sentencing under

10. Pursuant to 18 U.S.C. § 3553(a)(1)-(2), in sentencing the defendant, the Court shall consider not only the nature and circumstances of the offense, but also the need for the sentence to reflect the seriousness of the offense, to provide for just punishment, to deter the defendant and others from this type of criminal conduct, and to protect the public from further crimes of the defendant. The facts of this case clearly show that the defendant is not someone who made a mistake one time. This is an individual who, at the very least, possessed a loaded and operable gun so he could rob an innocent victim in support of his admitted drug habit (see PSR at ¶ 44); and who very well may have possessed drugs with the intent to distribute them for money, while using a loaded and operable gun to carry out his business plan. This type of criminal conduct is, by statute and by common sense, "dangerous" and it is defined as such not only because of the danger inherent in the drug/gun combination, but also because of the incredible harm that these drugs do to the community. The Court's sentence should reflect that.

11. Moreover, the defendant's record demonstrates that he has no intention of living within societally acceptable boundaries. In a prior case where he was sentenced to probation, his adjustment to supervision was characterized as poor, as he failed to keep scheduled meetings, failed to provide verification of employment, and failed to comply with supervision. See PSR at ¶ 27. About a month before the instant offenses, he was arrested for theft, and that case later resulted in

---

federal statutes. See 18 U.S.C. § 3561(a)(3) (prohibiting imposition of a sentence of probation where the defendant is sentenced at the same time to a sentence of imprisonment for the same or a different offense); and U.S.S.G. § 5B1.1, Background Commentary (explaining that the functional equivalent of a split sentence is achieved by providing that the defendant serve a term of imprisonment followed by a period of supervised release). Although Section 3561 presumably would not apply to a sentence imposed for a conviction under the D.C. Code, the Government has avoided requesting such concepts here to provide for uniformity of sentencing concepts used in this case.

a conviction for Theft Less Than $100.00 in the District Court for Carroll County, Maryland. See PSR at ¶ 28. Having been previously given a chance on probation, and having been arrested for theft, he then went on to commit the armed robbery and for which he is to be sentenced on September 3, 2008, and then to possess the gun and drugs for which he has pled guilty in this case.[4]

12. His mother contends that he mainly became involved with the criminal justice system after he was shot in 2004,[5] but it is apparent that both his contacts with the system and his criminal activity preceded the time that he was shot. See PSR at ¶¶ 31a to 31c. Moreover, the defendant himself reports that he has been using illegal narcotics regularly since the age of 15 (which age he turned in 2001). See PSR at ¶ 44. In any event, being shot should have deterred the defendant away from a dangerous life of crime, not steered him further into it. If anything, his conduct since he has been shot is just another indicator that this defendant needs to see real consequences for his criminal behavior if he is ever going to be deterred from a life of crime. The defendant needs a substantial sentence so that he is adequately deterred from committing these types of offenses yet again. He also needs drug treatment and educational and/or vocational training to reduce his motivation for committing crime.

WHEREFORE, for the above reasons, the Government respectfully requests that the Court impose a sentence as follows: (1) For Carrying a Pistol Without a License, to twenty-four months of imprisonment, followed by a three-year period of supervised release, with mandatory drug testing and treatment, and educational and/or vocational training, and (2) for Simple Possession, to six months of imprisonment, followed by a one-year period of supervised release, this sentence to run

---

[4] He was later penalized with a $35 fine for the theft in Maryland.

[5] The defendant was shot five times in the stomach in 2004. See PSR at ¶¶ 42.

concurrent to the sentence for Carrying a Pistol Without a License, and both sentences to run consecutive to any sentence previously imposed for Robbery with a Dangerous Weapon in Maryland.

        Respectfully,
        JEFFREY A. TAYLOR
        United States Attorney

        _____/s/_____
        Emily A. Miller
        Assistant United States Attorney
        Federal Major Crimes Section
        555 4th Street, N.W.  #4237
        Washington, DC 20530
        Phone: 514-7533; Fax: 514-6010
        D.C.  Bar No. 462077



U.S. Department of Justice

Drug Enforcement Administration

## LABORATORY REPORT

TO:   **Metropolitan Police Department**        CASE NUMBER:   159-647

FROM: Mid-Atlantic Laboratory
      Largo, Maryland

| Exh. No. | Lab. No. | Active Drug Ingredient (Established or Common Name) | Gross Weight | Net Weight | Conc. or Purity | Amount of Actual Drug | Reserve Weight |
|---|---|---|---|---|---|---|---|
| 1.01 | LM-550 | Cocaine Hydrochloride | 58.0 g | 11.0 g | 58.5 % | 6.4 g | 10.0 g |
| 1.02 | LM-550 | Cocaine Hydrochloride |  | 21.0 g | 77.9 % | 16.3 g | 20.4 g |

**Remarks:**
Gross Weight includes the weight of all packaging materials and the evidence envelope.
Exhibit 1.01 also contains Caffeine and Hydroxyzine.
Exhibit 1.02 also contains Caffeine, Hydroxyzine, Diltiazem, and Phenyltetrahydroimidazothiazole.

### Certification of Compliance Pursuant to D.C. Code § 48-905.06 (2001)

I attest and certify that I am a trained chemist employed by the United States Department of Justice, Drug Enforcement Administration, that I am charged with an official duty to perform analyses of suspected controlled substances, and that I have legal custody of this report.

All suspected controlled substance containers received by Drug Enforcement Administration chemists bear unique Drug Enforcement Administration laboratory numbers. When I received the container(s) bearing the laboratory number(s) set out above, I inspected the container(s) and verified that a sealed condition existed and then properly analyzed the contents for the presence of controlled substances by methods which are reliable and relevant to the identification of a controlled substance which includes procedures generally accepted in the forensic science community. These methods employed chemical reagents and/or analytical instruments which were free of contamination and were operating properly.

The analyses that I conducted were accomplished while safeguarding the chain of custody of the substances being analyzed. The results of my analyses are accurately set forth on this official report. After I completed my analyses, I placed the original container(s) and contents (except for the substance(s) consumed or those removed for other purposes) into a separate container which I then sealed in such a manner that any tampering would be readily evident. In the case of evidence submitted by the **Metropolitan Police for the District of Columbia (MPDC)**, the officially sealed container bearing the above laboratory number(s) was returned to the evidence vault maintained by the MPDC for proper storage.

Analyzed By: _Christopher H. Chang, Forensic Chemist_        Date: 12/28/07
             (Signature, Printed Name, Title)

**Official DEA Seal**

Approved By: _James V. Malone, Laboratory Director_          Date: 12/28/07
             (Signature, Printed Name, Title)

Form LS-05-010 (July 2005)                                    Page 1 of 1

Read Instructions on Reverse before completing

**U.S. Department of Justice**
Drug Enforcement Administration

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

| 1. HOW OBTAINED (Check): ☐ Purchase  ☒ Seizure  ☐ Free Sample  ☐ Lab Seizure  ☐ Money Flashed  ☐ Compliance Sample (Non-Criminal)  ☐ Internal Body Carry  ☐ Other (Specify) | 2a. FILE NO. 159647 | 2b. PROGRAM CODE | 3. G-DEP ID Felony |
|---|---|---|---|
| 4a. WHERE OBTAINED (City, State/Country): Washington, DC | 4b. DATE OBTAINED: 11-19-07 | 5. FILE TITLE: Rodreguez, Ariel | |
| 6a. REFERRING AGENCY (Name): Metropolitan Police Department | 6b. REFERRAL ☒ Case No.  OR  ☐ Seizure No.  No. 159647 | 7. DATE PREPARED: 11/20/2007 | 8. GROUP NO. |

| 9. Exhibit No. | 10. FDIN (8 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 1 | | Cocaine | Plastic bag containing 20 plastic bags cont white pwdr | 1 | 1 | $0.00 |
| 1 | | Cocaine | Plastic bag cont a white rock | 1 | 1 | $0.00 |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?  ☒ NO (included above)  ☐ YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:
Above listed alleged drugs were seized in the arrest of Rodreguez, Ariel of 4811 North Capitol St Ne #202 Wash, DC on 11-19-07 at approximately 2330 hours at 4811 North Capitol St Ne Wash, DC in Washington, D.C.

Chain of Custody:
COC-Cocaine-Def(Rodriguez)- Ofc Robinson-Ofc Wilson-F/T, H/S, P/B(1230/279) Amount Recovered 40g

| 17. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature and Title) |
|---|---|

**LABORATORY EVIDENCE RECEIPT REPORT**

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| 22. SEAL ☐ Broken  ☐ Unbroken | 23. RECEIVED BY (Signature & Date) | 24. Print or Type NAME and TITLE |

**LABORATORY REPORT**

25. ANALYSIS SUMMARY AND REMARKS

LM 550

| 26. Exhibit No. | 27. Lab No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| | | | | | | | |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |

DEA Form -7
(January 2002)

**U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION**
**FORENSIC CHEMIST WORKSHEET**   Page 1 of 2

| RECEIVED | | 3. SEALS   heat seal | 4. FILE NO./EXHIBIT NO./LAB NO. |
|---|---|---|---|
| 1. FROM  R Harris | 2. DATE  12/11/07 | ☒ Intact  ☐ Broken  ☐ None | 159647 / 1.01-1.02 / LM550 |

**5. DESCRIPTION OF EVIDENCE**

1 HSEE (xfh 1.02) containing 1 US dollar, 1 partially opened clear bag containing white powder, and (xfh 1.01) 1 clear bag containing 20 clear bags containing white powder

**6. SUMMARY OF FINDINGS**

GWT
58.0 g

Net Weight
11.0 g
21.0 g

Summary Analysis
Ex 1.01 (20 bags) contains Cocaine HCl, Caffeine, and Hydroxyzine
Ex 1.02 (1 bag) contains Cocaine HCl, Caffeine, Phenyltetrahydroimidazothiazole, Hydroxyzine, and Diltiazem

| 7. EXH. NO. | 8. LAB. NO. | 9. ACTIVE DRUG INGREDIENT | 10. QUANTITATIVE RESULTS | 11. AMT. OF PURE DRUG | 12. RESERVE |
|---|---|---|---|---|---|
| 1.01 | LM550 | Cocaine HCl | 58.5 % | 6.4 g | 10.0 g |
| 1.02 | LM550 | Cocaine HCl | 77.9 % | 16.3 g | 20.4 g |

**13. RESERVE EVIDENCE**

1 HSEE sealed on 12/21/07 containing 1 MPDC HSEE, 18 bags, 2 bags containing powder, 5 small bags containing powder, and 1 dollar bill

| 14. FORENSIC CHEMIST'S SIGNATURE  Chris Chang | 15. DATE REPORTED  12/28/07 | 16. REVIEWED BY (Initials) & DATE  JH 12/28/07 |

**17. REMARKS**
1.01: 9041C005, 1551.000, 2791.000
1.02: 9041C005, 1551.000, 8122.800 con, 2791.00, 2755.900

JHL 12/28/07

FORM DEA-86 (6-00) Previous editions are obsolete.                    Electronic Version Designed in JetForm 5.2 Version

FILE NO. 159647    EXHIBIT NO. 1.01-1.02    LAB NO. LM550

GROSS WEIGHT: 58.0 g (A)

A: DEA364139
B: DEA364017
C: DEA364124
D: DEA345537

$1.01: (1.998\,\text{g}/8.097\,\text{g})/(15\,\text{bgs}) = 0.13\,\text{g/bg}$
$(0.13\,\text{g/bg})(20\,\text{bgs}) = 2.6\,\text{g}$

DATE OPENED: 12/21/07

NET WEIGHT:
1.01: 13.673
(B) 10.095
2.600 g (20 bgs)   1.998 g (15 bgs)
11.073 g           8.097 g

1.02: 58.0 g (A)
37.06 g (1 HSEE dollar, 1 bg, 1 bg
21.03 g    20 bgs w/ white powder

EVIDENCE SAMPLING PROCEDURES: 1.01: removed & photos taken, screened 15 of 20 by GC/IR, ground to form comp., analyzed by tests stated below. 1.02: removed & photos taken, ground to form comp., analyzed by tests stated below

QUALITATIVE: 1.01:
GC/MS → 6890 in Screen Soln spectra matches Cocaine, Caffeine, Phenyltetrahydroimidazothiazole, Hydroxyzine, & Diltiazem Std.
IR → direct IR, spectra matches Coc HCl Std.
GC → 6890 in CHCl₃ C-24 retention time matches Coc Std.
GC Screen → 6890 in Screen Soln retention time matches Cocaine, Caffeine and Hydroxyzine Std.
GC/MS & IR blank good

1.02:
GC/MS → 6890 in Screen Soln spectra matches Cocaine, Caffeine, Phenyltetrahydroimidazothiazole, Hydroxyzine, and Diltiazem Std.
IR → direct IR, spectra matches Coc HCl Std.
GC → 6890 in CHCl₃ C-24 retention time matches Coc Std.
GC Screen → 6890 in Screen Soln retention time matches Cocaine, Caffeine, Phenyltetrahydroimidazothiazole, Hydroxyzine, & Diltiazem Std.
GC/MS & IR blank good

QUANTITATION:
METHOD #: GCOCH01
STANDARD: 25.0 mg → 50 ml CHCl₃ C-24 → 0.500 mg/ml → 0.445 mg/ml (ENA308) Coc HCl Std.
DATE PREPARED: (D) 11/7/07
SAMPLE: 1.01: 111.9 mg → 25 ml CHCl₃ C-24 → 10 ml CHCl₃ C-24 → 0.4476 mg/ml
1.02: 283.1 mg → 50 ml CHCl₃ C-24 → 10 ml CHCl₃ C-24 → 0.5662 mg/ml
(C)

$1.01: (58.5\%)(11.0\,\text{g}) = 6.4\,\text{g}$
$1.02: (77.9\%)(21.0\,\text{g}) = 16.3\,\text{g}$

RESERVE WEIGHT:
1.01: 11.073        8.097      (B) 16.066      SPECIAL PROGRAMS: DNMC
      0.987 g       2.110 g        8.956 g (1 bg)   1.02: 22.880
     10.086 g       0.987 g (consumed)  7.110 g         2.455 g (1 bg)
                                                       20.425 g

GROSS WEIGHT AFTER ANALYSIS: 86.0 g (A)

DATE SEALED: 12/21/07

FORM DEA-86 (6-00) Reverse                    *U.S. Government Printing Office: 2002 — 491-387/52008



